# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| JOHN O. COPELTON,<br><br>    Plaintiff,<br><br>  vs.<br><br>CORRECTIONAL<br>CORPORATION OF AMERICA,<br>et al.,<br><br>    Defendants. | Cause No.  CV 09-00019-GF-SEH-RKS<br><br><br>FINDINGS AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE TO<br>GRANT SUMMARY JUDGMENT |

Plaintiff John O. Copelton, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his Eighth and Fourteenth Amendment rights by substituting high sugar food items for diabetic food items dictated by the menu written by the company dietitian.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Pending is Defendants Bowen and Heinrich's Motion for Summary Judgment. There is no genuine issue of material fact regarding the liability of Heinrich and Bowen. It is recommended the Motion for Summary Judgment be granted and that the Court sua sponte grant summary judgment for Defendants Law and Crossroads.

## I. STANDARD

A party is entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). That is, where the documentary evidence permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT SUMMARY JUDGMENT–CV 09-000019-GF-SEH-RKS / PAGE 2 OF 29

properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id*. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Id*.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Anderson*, 477 U.S. at 252.

In the context of a motion for summary judgment where a litigant is proceeding pro se, the Court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 127 (9th Cir. 1988).

## II. ALLEGATIONS

Mr. Copelton's verified Complaint alleged Defendants Bowen and Heinrich substituted high sugar food items for diabetic food items dictated by the menu written by the company dietitian, prescribed by doctors, and approved by their supervisors. As a result, Mr. Copelton alleges his diabetes progressed to the point that he is now using more than 125 IU of insulin a day and 2000 mg of Metformin, an oral medication. Mr. Copelton contends his eye sight has deteriorated causing constant headaches and a need for stronger glasses. He states his blood pressure has been at dangerous levels such that doctors have to monitor it daily and have had to increase his medications to control it. The numbness in his feet and legs caused by Nephropathy from

nerve damage has made walking frightening and forced Mr. Copelton to buy expensive footwear to avoid getting ulcers which could lead to amputations.

Mr. Copelton alleges he has been hospitalized twice because of diabetes related complications that left him with severe scarring and at extremely high risk of infections.  The forced intake of the high sugar results in severe high glucose levels in his blood and extreme swings of insulin to help control it.  This in turn causes daily tremors and sweats, the shakes, and cravings.

## III.  UNDISPUTED FACTS[1]

Mr. Copelton is a state inmate who was formerly incarcerated at the Crossroads Correctional Facility in Shelby, Montana.  Defendant Carol Bowen is employed by Compass Group, USA Inc. d/b/a Canteen Correctional Services.  Ms. Bowen served in various supervisory positions for Canteen at Crossroads between July 2003 and December

---

[1]Mr. Copelton did not file a Statement of Genuine Issues as required by Local Rule 56.1(b).  To the extent Mr. Copelton did not specifically dispute Defendants' Statement of Undisputed Facts in other filings, Defendants' facts will be deemed undisputed.

18, 2008.  On December 18, 2008, Bowen became Canteen's Manager at Crossroads, a position she currently holds.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 2).

Defendant Piper Heinrich was Bowen's immediate predecessor as Manager at Crossroads.  Ms. Heinrich is no longer employed by Canteen and has not worked at Crossroads since December 18, 2008. (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 3).

Mr. Copelton submitted an informal grievance on December 16, 2008 stating he received "regular" peanut butter, jelly, and applesauce with the restricted diabetic diet breakfast tray served that day.  He submitted a formal grievance on December 24, 2008 concerning the same incident.  The response stated that regular peanut butter was properly outlined on the diabetic diet menu and that diet jelly and diet applesauce were served with the diabetic diet meals.  The response further stated that Mr. Copelton had been "seen on more than one occasion taking a regular [diet] tray."  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 10).

Corrections Corporation of America ("CCA") maintains records of

inmates' commissary purchases in the ordinary course of operations at Crossroads.  The commissary purchases records between May 26, 2008 and December 8, 2009 show that Mr. Copelton consistently purchased sugar and fat laden food from the commissary such as honey buns, candy bars, salt water taffy, cookies, cup cakes, soda, grape jelly and other snacks throughout his confinement at Crossroads.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 13).

Defendant Bowen has no involvement or input with prescribing diets, designing menus, establishing meal schedules or food service policy.  Bowen is responsible for ensuring that Canteen provides food services at Crossroads in a cost-effective manner and in compliance with all CCA food service and security polices and all pertinent government safety and sanitation regulations.  Ms. Bowen is not involved with the actual preparation and service of inmate meals. (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 14).

Medical diets are available for Crossroads inmates whose medical conditions require specific dietary restrictions to preserve their health and well-being, but Canteen's employees are not authorized to

prescribe any such diets.  The CCA/Crossroads medical department prescribes medical diets for inmates and communicates those diet prescriptions to Canteen via a written diet order.  (Court Doc. 74—Defendants' Statement of Undisputed Facts, ¶ 17).

Canteen is required to monitor inmates on medically prescribed diets to ensure compliance with their prescribed diets.  Once a restricted medical diet is prescribed for an inmate, Canteen is permitted to deviate from the diet only to the extent authorized by the CCA/Crossroads medical department.  (Court Doc. 74—Defendants' Statement of Undisputed Facts, ¶ 18).

Canteen determines what type of medical dietary modifications, if any, it must make to the meals it prepares for the Crossroads inmates based on information received from the Crossroads medical department each day.  Based upon information received from the Crossroads medical department, Canteen maintains a "diet roster" containing the name of the inmate and his restricted diet prescription, which Canteen prints each morning and reviews in order to plan for the preparation of that day's restricted diet meals.  (Court Doc. 74—Defendants' Statement

of Undisputed Facts, ¶ 19).

Inmates with medical diet prescriptions, like Mr. Copelton, must present their identification cards through the meal tray slot, which an inmate food service worker stationed on the other side of the slot compares to the information listed on the diet roster.  None of the meal trays served to inmates with medical diet prescriptions are prepared before the inmates present their identification cards through the tray slot.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 21).

Upon confirming that the name on the identification card is listed on the diet roster, an inmate food service worker prepares a meal tray in accordance with the menu corresponding with the inmate's prescribed diet.  During this process, a Canteen staff member monitors the inmates food service worker preparing the trays and, once complete, individually inspects each meal tray for conformity with the diet prescribed for the inmate.  Any discrepancies detected are corrected before the meal trays are passed through the tray slot.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 22).

Before their meals are passed through the tray slot, inmates with

medical diet prescriptions must also sign a log confirming receipt of their restricted diet meals.  If an inmate does not present his identification card at the tray slot and/or sign the log, Canteen is not permitted to serve the inmate a restricted diet meal.  This process ensures, to the extent possible, that the inmates comply with their prescribed dietary restrictions.  It also helps prevent inmates from trading or otherwise converting their food into contraband.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 23).

All inmates are instructed to alert the CCA correctional officers on duty in the chow hall of any problems with their meals immediately upon becoming aware of any such problems.  Upon receiving notification from a CCA correctional officer (or inmate) of discrepancies that were somehow not detected during the inspection at the tray slot, an effort is made to correct the problem or to provide an alternative accommodation for the inmate during the same meal period to the extent possible.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 24).

According to the diet orders issued for Mr. Copelton, on or about

January 23, 2008, the CCA/Crossroads medical department prescribed a medical diet for Mr. Copelton that is commonly referred to as the diabetic diet.  The diabetic diet is generally prescribed as an accommodation for inmates with diabetes.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶¶ 25-26).

A dietician designed the diabetic diet menu to ensure, to the extent possible, that inmates with diabetes receive nutritionally adequate meals, maintain a desirable body weight, minimize consumption of fat and simple carbohydrates and maintain an acceptable blood glucose level.  The diabetic diet replaces supplemental items such a jelly, applesauce, syrup, and salad dressing with unsweetened or sugar free versions of these items.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 27).

Once prescribed, Canteen is not permitted to deviate from the diabetic diet menu except to the extent necessary to respond to production problems, product availability or security issues.  Any necessary substitutions are generally made from the same food group specified under the menu.  Canteen is also required to notify the

Crossroads Warden or his designee before any substitutions are made and email a menu substitution notification to the Crossroads Warden or his designee prior to the end of the shift during which a substitution is made.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 29).

Additionally, each month the Canteen Manager and the Crossroads Warden (or his designee) review a list of the substitutions made during the prior month and sign the list to acknowledge the propriety of those substitutions.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 30).

Mr. Copelton's signature does not appear on the diet meal receipt log for the diabetic diet breakfast meal on December 16, 2008 which Mr. Copelton referenced in the Complaint.  (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 31).

Mr. Copelton's signature also does not appear on the diet meal receipt logs for the diabetic diet breakfast, lunch or dinner meals on the following days in December 2008:  December 1-17, 2008; December 19-21, 2008; and December 24-31, 2008.  In total, Mr. Copelton only signed

for approximately 55% of his prescribed diabetic diet meals during December 2008. The diet meal receipt logs and other records show that Mr. Copelton also failed to sign for the diabetic diet meals on several other occasions since the issuance of his January 23, 2008 diet order. (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 32).

In or around December 2008, after becoming aware of Mr. Copelton's jelly complaint, Canteen conducted additional training amongst its staff and inmate kitchen workers to ensure that inmates receiving diabetic diets received sugar-free jelly. Canteen also began purchasing an alternative brand of sugar-free jelly that was produced in a more distinguishable package. Bowen is not aware of any other complaints by Crossroads inmates concerning the purported service of incorrect jelly after these changes were made. (Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 33).

During December 2008, Bowen observed Mr. Copelton taking and eating regular meal trays. In particular, on December 25, 2008, Bowen observed Mr. Copelton eating a regular meal tray in the chow hall and approached Mr. Copelton to inform him of her observation. In

accordance with CCA policies, Bowen immediately recorded Mr.

Copelton's non-compliance with his diabetic diet in an incident report.

(Court Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 34).

Canteen provided the diabetic diet to Mr. Copelton until

September 14, 2009, when the CCA/Crossroads medical department

terminated Mr. Copelton's diabetic diet prescription based upon his

non-compliance with his prescribed diet, i.e. he repeatedly failed to

consume diabetic meals.  The CCA/Crossroads medical department

simultaneously directed Canteen to cease providing diabetic diet meals

to Mr. Copelton, which Canteen did on or about the same date.  (Court

Doc. 74–Defendants' Statement of Undisputed Facts, ¶ 35).

## IV.   ANALYSIS

Mr. Copelton alleges Defendants were deliberately indifferent to

his serious medical needs in violation of the Eighth Amendment

prohibition against cruel and unusual punishment, or the Fourteenth

Amendment due process clause.  A pretrial detainee's right to adequate

medical care derives from the substantive due process clause of the

Fourteenth Amendment.  *Gibson v. County of Washoe, Nevada*, 290

F.3d 1175, 1187 (9th Cir. 2002) cert. denied 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003).  But since Mr. Copelton is a convicted prisoner his claims will be addressed under the cruel and unusual clause of the Eighth Amendment.

In order to establish a denial of medical care claim under the Eighth Amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Such a claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

An objectively "serious" medical need is one a reasonable doctor would think worthy of comment, one which significantly affects daily activities, or one which is chronic and accompanied by substantial pain. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).  Diabetes can be a serious medical need.  *Lolli v. County of Orange*, 351 F.3d 410,

420 (9th Cir. 2003). ("[A] constitutional violation may take place when the government does not respond to the legitimate needs of a detainee whom it has reason to believe is diabetic.").  Mr. Copelton had a serious medical need.

The second element of a denial of medical care claim requires a plaintiff to show that a defendant's response to the need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin*, 974 F.2d at 1060.  Indifference may exist when "prison officials deny, delay or intentionally interfere with medical treatment."  *McGuckin*, 974 F.2d at 1059 (*quoting Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)).  An inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983.  *Estelle*, 429 U.S. at 105.  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Mr. Copelton claims Defendants Bowen and Heinrich intentionally interfered with his medical treatment by changing his

medically prescribed treatment plan, that is changing the foods provided for in his diabetic diet menu.  Mr. Copelton's Complaint alleges "the kitchen" has been substituting items like jelly and canned fruit for the food called for on the diabetic diet menu.

With regard to the canned fruit issue, Mr. Copelton alleges the kitchen was substituting canned fruit for canned fruit labeled "sweetened" or "packed in syrup."  (Court Doc. 2, p. 4).  The diabetic menu provided by both parties provides that canned fruit was permissible on the diabetic diet.  The diabetic diet frequently allowed the option of fresh fruit or ½ cup canned fruit.  The menu does not prohibit canned fruit which is labeled "sweetened" or "packed in syrup." (Court Doc. 75-5, pp. 1, 3-18, 20-32, 34-36).  Mr. Copelton points to no specific incident of improper substitution.  Therefore, any claims regarding the substitution of canned fruit should be dismissed.

Mr. Copelton's claim regarding jelly also fails.  Mr. Copelton argues he did not receive sugar free jelly on December 16, 2008 as prescribed by his diabetic diet menu.  He filed an informal resolution but alleges the next time he was at breakfast he was again given

regular jelly.  Mr. Copelton has attached a label from jelly package which indicates it is a 3/4 oz package of jelly.  Thus, Mr. Copelton received 3/4 oz of regular jelly instead of sugar free jelly on two occasions.

This claim fails because Mr. Copelton has not established the personal participation of the named defendants in the two occasions of alleged substitutions and he has not established causation.

Section 1983 imposes liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights.  Monell v. Department of Social Services, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Section 1983 will not impose liability on supervising officers (such as Defendants Bowen and Heinrich) under a respondeat superior theory of liability.  Monell, 436 U.S. at 691-94. That is, these Defendants cannot be held liable just because they oversee the food services at Crossroads.  Instead, supervising officers can be held liable under § 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights."  King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987).  The Ninth Circuit has identified four

general situations in which supervisory liability may be imposed:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.

al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)).

Mr. Copelton has alleged two incidents when he received the wrong type of jelly.  Defendants have presented undisputed testimony that the food trays are prepared by inmate workers and monitored by other staff workers.  Defendant Bowen's undisputed testimony is that she is not personally involved with the actual preparation and service of inmate meals.  (Court Doc. 75–Bowen Affidavit, ¶ 75).  Mr. Copelton presented no evidence in response to the Motion for Summary Judgment to demonstrate that either Defendant Bowen or Defendant Heinrich were personally involved in the improper substitutions.  Mr. Copelton has presented insufficient facts to demonstrate the supervisory liability of Defendants Bowen and Heinrich.

Even though Mr. Copelton's claim is disposed of by the preceding analysis, causation is a prima facie element of Mr. Copelton's claim that he failed to establish.  A defendant deprives a plaintiff of a constitutional right under § 1983 if he commits an affirmative act or fails to perform a duty he is legally required to do that causes the constitutional deprivation.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The causation inquiry focuses on the duties of each individual defendant whose acts or omissions allegedly caused the deprivation.  *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).  Only those acts or omissions amounting to "deliberate indifference" which cause injury to a prisoner's health are actionable under § 1983.  *Estelle*, 429 U.S. at 106. The causal link between the deliberate indifference and the eighth amendment deprivation is more individualized when the prisoner seeks damages than when an injunction is sought.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The prisoner must establish that the defendant's indifference was "the actual and proximate cause of the deprivation of the inmates' eighth amendment right."  *Id.* at 634.  Actual cause is established if the

plaintiff's injury would not have occurred "but for" the defendant's conduct. *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). To satisfy the "but for" test, the defendant's conduct must be at least one of the actual causes of the plaintiff's injury. *Id.* at 1506.

To prove a constitutional deprivation, the plaintiff may even have to prove that the defendant's acts "were so closely related to the deprivation of the plaintiff's right as to be the moving force that caused the ultimate injury." 9th Cir. Pattern Jury Instr. 9.8 (2009)(citing *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (1992). The plaintiff in this case would need to present expert medical testimony to prove defendant's actions caused his injuries to establish enough evidence to avoid dismissal upon motion. Fed. R. Evid. 702; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)(diabetic who received amputations needed expert medical testimony to prove causation in deliberate indifference case); *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1987)(prisoner's deliberate indifference case dismissed who had only her own statements and no medical evidence to support her claims); *Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000)(dismissing eighth amendment

claim against prison doctors who refused medication requests because the prisoner only speculated the refusal caused his injury); *Campbell v. California Dept. Of Corrections & Rehabilitation*, 2010 WL 3238911, 19 (E.D. Cal.)(prisoner's case dismissed when prisoner had no expert to prove alleged food poisoning was caused by prison's unsanitary food practices).

Even without the evidence that Mr. Copelton purchased regular jelly, candy bars, cookies, cup cakes, soda, and other such snacks both before and after the December 16, 2008 regular jelly incident,[2] Mr. Copelton would still likely be required to provide expert medical testimony that the two regular jelly packets caused his medical

_____

[2]After the incidents in December 2008 in which Mr. Copelton was given an ounce and a half of regular jelly, Mr. Copelton's commissary purchases included fig bar cookies (February 26, 2009); Big Hunk candy bars (February 26, 2009 and March 6, 2009); 5 ounces of atomic fireballs (June 5, 2009); a 20 ounce cookie sandwich (March 6, 2009); Fritos Chili Cheese chips (February 20, 26 and March 6, 2009); a Milky Way candy bar (February 26, 2009); Snickers candy bars (February 20 and June 19, 2009);14 ounces of saltwater taffy (February 26 and March 6, 2009); 2 pounds of licorice (February 26 and March 6, 2009); 20 ounce Classic Cokes (February 20 and 26, 2009); Honey Buns (March 6, 2009); apple pie (February 20 and March 6, 2009); cherry pies (March 6 and June 12, 2009); and a large Hershey's candy bar (March 6, 2009).

problems.  Moreover, Defendants presented evidence that Mr. Copelton was frequently taking a non-diabetic meal tray.


Mr. Copelton has failed to set forth specific facts or any medical evidence showing actual and proximate causation between the alleged improper food substitution and the alleged diabetes problems.  Mr. Copelton cannot establish a claim for "deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ( per curiam ) *citing Estelle*, 429 U.S. at 106.

Given the evidence presented by Defendants it is implausible that Mr. Copelton's medical difficulties with his diabetes were caused by the irregularities with the food service diet.  Mr. Copelton has not disputed this evidence, it is uncontroverted, and it is the death knell of Mr. Copelton's claims against all Defendants.  No reasonable jury could find for Mr. Copelton under these facts.

## V.  CONCLUSION

### A.  Summary Judgment

Mr. Copelton's claims are insufficient to survive summary judgment.  Mr. Copelton has, as a matter of law, failed to produce sufficient evidence to prove a violation of his Eighth Amendment or Fourteenth Amendment rights.

A district court may enter summary judgment sua sponte, "if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.' " *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003)(*quoting Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982). "Sua sponte grants of summary judgment are only appropriate if the losing party has 'reasonable notice that the sufficiency of his or her claim will be in issue.' " *Greene v. Solano County Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (*quoting Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)).

Here, Defendants Bowen and Heinrich moved for and the Court should grant summary judgment on the grounds that Mr. Copelton cannot establish that his diabetic problems were caused by or made worse by the irregularities with the food service diet.  Defendants

Bowen and Heinrich provided Mr. Copelton with a Rand notice setting forth his obligations in responding to the motion for summary judgment.  The issue of whether Mr. Copelton's medical issues were caused by or made worse by the Crossroads food service is determinative of all claims against all Defendants.  As such, Mr. Copelton had "a full and fair opportunity" to address whether or not any constitutional violation caused his injuries.  Therefore, the Court should sua sponte grant summary judgment for Defendants Law and Crossroads.

### B.    Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
>> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not

be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984). A complaint lacks an arguable basis in law if controlling authority requires "a holding that the facts as alleged fail to establish even an arguable claim as a matter of law." *Guti v. INS*, 908 F.2d 495, 496 (9th Cir. 1990).

Mr. Copelton failed to produce sufficient evidence to prove his claims, therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

## C. Address Changes

At all times during the pendency of this action, Mr. Copelton

SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Copelton has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants Bowen and Heinrich's Motion for Summary Judgment (Court Doc. 72) should be granted.

2.  The Court should sua sponte grant summary judgment for Defendants Law and Crossroads.

3.  The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the

Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Mr. Copelton failed to produce sufficient evidence to support his claims and as such no reasonable person could suppose that an appeal would have merit.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written

objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 5th day of November, 2010.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge